[Cite as *State v. Peeples*, 2014-Ohio-4064.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                     :               No. 13AP-1026
                                                                                            (C.P.C. No. 12CR-4679)

v.                                                          :

                                                                                    (REGULAR CALENDAR)

Derrick Peeples,                                     :

      Defendant-Appellant.               :

---

D E C I S I O N

Rendered on September 18, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*W. Joseph Edwards*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Derrick Peeples, appeals from a judgment of the Franklin County Court of Common Pleas convicting him following a jury trial of aggravated robbery, aggravated murder, murder, and having a weapon under disability. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On the night of August 24 and into the early-morning hours of August 25, 2012, the victim, Jerome Crockett, was at Klub 57, a bar on Beechwood Road in Columbus. Mr. Crockett went to the bar with sisters Tina and Carla Taylor to meet Tina and Carla's mother, Carol Obey, and her sister, Demitra Conde.

{¶ 3} The group exited the bar near closing time, approximately between 2:15 a.m. and 2:30 a.m. on August 25. The group walked to the bar parking lot to their

cars. As Mr. Crockett, Carla Taylor, and Tina Taylor were approaching the car, appellant approached Mr. Crockett and demanded money. Mr. Crockett laughed and put his hands in the air. Appellant then fired multiple shots and ran away from the scene. Mr. Crockett and others in the group ran across the street towards a corner market, where Mr. Crockett collapsed in the store's parking lot. Mr. Crockett died from a gunshot wound to the chest.

{¶ 4} Homicide Detective Robert Wachalec interviewed Ms. Conde, Ms. Obey, Carla Taylor, and Tina Taylor separately in the days following the shooting. Ms. Obey and Tina Taylor told Detective Wachalec they could not identify the shooter, while Ms. Conde and Carla Taylor stated that they probably could identify the shooter. Detective Wachalec prepared a photo array that another detective showed to the witnesses separately. Ms. Conde and Carla Taylor identified appellant as the shooter.

{¶ 5} On September 14, 2012, a Grand Jury indicted appellant on one count each of the following: aggravated robbery with specification, in violation of R.C. 2911.01; aggravated murder with specification, in violation of R.C. 2903.01; murder with specification, in violation of R.C. 2903.02; and having a weapon while under disability, in violation of R.C. 2923.13. Appellant's case was tried to a jury on September 23, 2013 with respect to all counts except the weapon-under-disability count, which was tried by the court.

{¶ 6} At trial, Ms. Conde and Carla Taylor again identified appellant as the shooter. Ms. Conde testified she recognized the appellant, as they had grown up in the same neighborhood and she had seen him earlier that night at the bar. Ms. Conde described the shooter as a black male with braided hair, and wearing jean shorts, a white t-shirt, and Air Jordan shoes. Ms. Conde testified that she initially told detectives she could not name the shooter because she feared retaliation. Ms. Conde also testified that over the course of the night, she had two or three drinks and was not intoxicated and that Ms. Obey did not drink at all because she was driving. Ms. Conde also testified that the parking lot was well-lit and that she paid very close attention to the activity in the parking lot.

{¶ 7} Carla Taylor also testified she was able to get a good look at the shooter. She described the individual as having braided hair, wearing jeans, and coming up to Mr. Crockett's chest. Carla Taylor testified she saw the shooter pull the gun from his pocket

and heard three shots. Carla Taylor originally told police she was unsure if she would be able to identify the shooter because she did not pay attention to his face. At trial, Carla Taylor testified she made the statement because she did not want to be involved in the investigation. Similar to Ms. Conde, Carla Taylor described the parking lot as being well-lit on the night of the shooting, stating there were "lights everywhere." (Tr. Vol. III, 300.) Carla Taylor further testified she had only two drinks at the bar and that neither her sister, Tina Taylor, nor Ms. Conde, appeared to be drunk.

{¶ 8} Ms. Obey testified that she could not identify the shooter but was able to provide a general description, including the individual was a black male approximately 5'2" or 5'3," who was wearing a white t-shirt and jeans. Ms. Obey recalled that the shooter approached Mr. Crockett and said "[g]ive me your money," before she heard multiple gunshots. (Tr. Vol. II, 124.) Ms. Obey further stated the shooting took place under a street lamp that was within a few feet of her car.

{¶ 9} Tina Taylor testified at trial that, upon leaving the bar and arriving at the car, an individual approached the group and told Mr. Crockett to "empty your pockets," to which Mr. Crockett responded by laughing. (Tr. Vol. III, 240.) Ms. Taylor then heard multiple gunshots. When being interviewed by detectives following the shooting, Ms. Taylor described the shooter as "[n]ot very tall at all," and stated he did not even come up to Mr. Crockett's chin. (Tr. Vol. III, 268.)

{¶ 10} The jury returned a verdict of guilty on all three counts it considered, and on October 17, 2013, the trial court found appellant guilty of the weapon-under-disability count. The court sentenced appellant to 52-years-to-life incarceration on November 13, 2013. Appellant appealed the trial court judgment to this court on December 5, 2013.

## II. Assignments of Error

{¶ 11} Appellant assigns the following assignment of error for our review:

> The trial court erred when it entered judgment against the appellant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.

## III. Discussion

{¶ 12} In his sole assignment of error, appellant asserts that neither sufficient evidence nor the manifest weight of the evidence supports his conviction. Specifically,

appellant argues the witnesses did not see the shooter long enough to identify appellant as the shooter, and the state's lack of physical evidence connecting appellant to the crime requires reversal. We disagree.

*A. Sufficiency of the Evidence*

{¶ 13} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. When a conviction is based primarily on the testimony of an individual, the jury is in the best position to weigh the credibility of the witness and is entitled to believe or disbelieve the testimony. *State v. Thompson*, 10th Dist. No. 07AP-491, 2008-Ohio-2017, ¶ 35.

{¶ 14} Appellant was convicted of aggravated robbery in violation of R.C. 2911.01, which reads in part:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possess it, or use it;
>
> (2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.

{¶ 15} Appellant was also convicted of both murder and aggravated murder in violation of R.C. 2903.02 and 2903.01. Under R.C. 2903.02(B), "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." R.C. 2903.01(B) provides, in part, that "no person shall purposely cause the death of another *

* * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery."

{¶ 16} The state presented testimony at trial establishing that appellant shot Mr. Crockett while committing or attempting to commit an aggravated robbery against him. The witnesses consistently described that, prior to shooting, appellant demanded money from Mr. Crockett. The witnesses also consistently recounted the physical description of appellant, including two witnesses identifying appellant as the shooter and the other two giving corroborating testimony as to appellant's physical stature, hairstyle, and clothing.

{¶ 17} All the witnesses heard multiple gunshots following appellant's demand for money, and Carla Taylor testified she saw the shooter pull a gun out of his pocket. The jury could also conclude, based on the witnesses' testimony, that appellant acted purposely in causing Mr. Crockett's death. A jury may consider the entire set of circumstances surrounding the shooting and infer appellant's intent based on those facts. *State v. Loughman*, 10th Dist. No. 10AP-636, 2011-Ohio-1893, ¶ 47, citing *State v. Grant*, 67 Ohio St.3d 465, 478, citing *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329 (1955), paragraph three of the syllabus.

{¶ 18} Therefore, the witnesses' testimony, if found credible by the jury, is sufficient to support appellant's convictions of aggravated robbery, aggravated murder, and murder. Accordingly, when viewing the evidence in the light most favorable to the state, we conclude the state presented sufficient evidence for appellant's convictions.

*B. Manifest Weight*

{¶ 19} In contrast to assessing sufficiency of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must view the entire record, weighing the evidence, considering the credibility of witnesses, and determining whether " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, supra, at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). In conducting a manifest weight review, we may consider credibility of witnesses but " 'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact which accepted the testimony of such witness unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.' " *State v. Brown*, 10th Dist. No. 02AP-11, 2002-

Ohio-5345, ¶ 10, quoting *State v. Long*, 10th Dist. No. 96AP-511 (Feb. 6, 1997). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 20} Here, two witnesses identified appellant as the shooter in both a photo array and later at trial. Two other witnesses, although unable to identify the shooter, testified as to what the shooter was wearing, his hairstyle, and height. Additionally, the witnesses consistently recounted the verbal exchange between Mr. Crockett and the shooter prior to shots being fired. All witnesses but one testified the parking lot was well-lit on the night of the shooting. A reasonable juror could find the testimony to be credible.

{¶ 21} With respect to appellant's argument that no physical evidence connects him to the crime, this court has concluded that a lack of physical evidence, standing alone, does not render appellant's conviction against the manifest weight of the evidence. *State v. Conner*, 10th Dist. No. 12AP-698, 2013-Ohio-2773, ¶ 12, citing *State v. Shedwick*, 10th Dist. No. 11AP-709, 2012-Ohio-2270, ¶ 32, citing *State v. Berry*, 10th Dist. No. 10AP-1187, 2011-Ohio-6452, ¶ 20, citing *State v. Nix*, 1st Dist. No. C-030696, 2004-Ohio-5502, ¶ 65-71; *see also State v. Jackson*, 7th Dist. No. 09 JE 13, 2009-Ohio-6407 (holding that a conviction based on victim's testimony identifying defendant was not against the manifest weight of the evidence despite the lack of physical evidence). "If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other physical evidence does not render the conviction against the manifest weight of the evidence." *Jackson* at ¶ 16.

{¶ 22} While no physical evidence connects appellant to the shooting, as noted above, two witnesses identified appellant as the shooter; one witness testified she saw the shooter pull a gun out of his pocket; five witnesses testified to hearing the gunshots; and Mr. Crockett died as a result of a gunshot wound. The testimony produced at trial, if found credible by the jury, clearly established appellant shot Mr. Crockett, and the lack of physical evidence connecting appellant to the scene of the shooting does not render the jury's conviction against the manifest weight of the evidence.

{¶ 23} After a thorough review of the record, we find sufficient evidence to support appellant's conviction, and the weight of the evidence demonstrates the jury did not

clearly lose its way in finding appellant guilty of the charges against him. Accordingly, we overrule appellant's sole assignment of error.

## V. Conclusion

{¶ 24} We conclude appellant's convictions were supported by legally sufficient evidence and were not against the manifest weight of the evidence. Accordingly, we overrule appellant's assignment of error and affirm the decision of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and BROWN, J., concur.